**DEMPSEY–TEGELER & CO., Inc., Plaintiff-Appellee (Cross-Appellant),**

v.

**Richard D. IRWIN and Anne Marie Irwin, Defendants-Appellants (Cross-Appellees).**

**Nos. 17007, 17008.**

United States Court of Appeals Seventh Circuit.

Aug. 5, 1969.

Rehearing En Banc Denied Sept. 25, 1969.

Bernard Weisberg, Mark S. Lieberman, Charles D. Stein, Chicago, Ill., for Dempsey-Tegeler & Co.; Gottlieb and Schwartz, Chicago, Ill., of counsel.

John H. Bishop, James J. Flynn, Chicago, Ill., for Richard D. Irwin and another; Bishop, Burdett, Falasz & Ericson, Chicago, Ill., of counsel.

Before HASTINGS, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff-appellee, Dempsey-Tegeler & Co., Inc., filed suit under 28 U.S.C. § 1332 to recover for failure of defendants-appellants, Richard D. Irwin and Anne Marie Irwin to deliver 500 shares of National Video Corporation stock. The district court having before it the pleadings, documentary evidence and extensive depositions, granted summary judgment for the plaintiff from which defendants appeal. Plaintiff cross-appeals from the denial of interest.

Since 1963, Richard D. Irwin and his wife, Anne Marie Irwin, for whom Richard Irwin acted as agent in all stock transactions, traded extensively in corporate stocks. Dempsey-Tegeler & Co., Inc., plaintiff, acted as agent and broker

for the Irwins. Plaintiff's representative in all transactions between the plaintiff and defendants was Robert Shields. Since Irwin was a very busy individual, he instructed Shields to keep records of all transactions. The following records were kept by Shields: (1) a book reflecting Irwin's current position in a security; (2) copies of all purchase and sale confirmations sent to Irwin; and (3) copies of monthly statements of account sent to Irwin.

Prior to September 13, 1965, Irwin owned 1500 shares of National Video Corporation which traded on the American Stock Exchange. On September 13, 1965, the Board of Directors announced a proposed 2 for 1 stock split to be acted upon at the annual meeting on October 13, 1965. On September 29, 1965, Irwin sold 500 shares of National Video. The American Stock Exchange announced on October 8, 1965, that the stock of National Video would sell "ex" the distribution on November 1, 1965, and that all stock delivered after October 12, 1965, must be accompanied by a due bill to be redeemed on November 5, 1965, by the delivery of the shares distributed as a result of the split.

Shields on October 18, 1965, requested from Irwin's secretary the delivery of 500 shares of National Video sold on September 29. Irwin sold an additional 500 shares of National Video on October 22, 1965, which was prior to the date the shares were traded "ex" distribution on the American Stock Exchange. Sometime after October 28, 1965, he received 1500 split shares from National Video in the mail. On November 3 and again on November 4, Irwin sold 500 shares, or a total of 1000 shares of National Video for the two days. Not including the sale on September 29, Irwin sold 2000 shares. Shields called Irwin's secretary on November 18, 1965, and asked her to deliver 2000 shares of National Video in order to settle the account. Since the September 29 sale was not settled until after the corporate record date of the split, the split shares should have been delivered to Dempsey-Tegeler when they were received by Irwin in order to settle the transaction. However, no request was made for the 500 split shares of National Video, and Irwin sold these extra 500 shares of National Video through another broker on November 27, 1965, while in Florida.

In late February, 1966, Irwin was first informed by Shields that he was short 500 shares of National Video to Dempsey-Tegeler. Irwin was equivocal and Shields, being unable to explain how the short position arose, said he would have the account rechecked. Irwin stated that if it could be proved that he owed plaintiff the stock, he would deliver 500 shares. Various discussions took place between officials of Dempsey-Tegeler and Irwin and his accountants. At all times Irwin denied that he owed 500 shares and claimed that plaintiff failed to prove otherwise. On April 16, 1966, an official of the plaintiff called Irwin in Ohio and demanded payment. Irwin's accountant was connected to the long distance call and after prodding by Irwin, admitted that Irwin owed the shares, but Irwin denied this short position. Plaintiff demanded payment by April 18. Since defendant did not deliver on April 18, plaintiff purchased 500 shares on the open market at a price of $111 per share. In the early part of May, Irwin consulted another accountant who confirmed that Irwin was short 500 shares. When the price of National Video fell to $79 per share, Irwin purchased 500 shares and tendered them to plaintiff. Plaintiff refused and this suit to recover the cost of the 500 shares purchased on April 18, 1966, followed.

■ Defendants contend that summary judgment for the plaintiff was improperly granted because there were various issues of fact to be resolved. There is no disagreement as to the statement by Irwin promising to deliver 500 shares of National Video if the plaintiff proved that he owed it. The district court held that this promise constituted a ratification of any wrongful acts by plaintiff. Since the facts in this case which allegedly constituted the ratification are

undisputed and presented no genuine issue of material fact for a jury, the district court appropriately disposed of the issue by summary judgment. *Cf.* Zahora v. Harnischfeger Corporation, 404 F.2d 172 (7th Cir. 1968). The district judge, faced with no question as to which reasonable minds could differ, applied the legal criteria as to what constitutes ratification. The consent to be bound by the acts of the plaintiff was manifest in the verbal statement of Irwin. We affirm the district judge's conclusion that the promise to deliver the shares constituted a ratification by Irwin.

■ Ratification is a unilateral act and reliance is not a necessary element. Seavy, Law of Agency, § 37 (1964). Reliance is a necessary ingredient where the theory is one of estoppel. If the consent is not manifest but must be inferred from physical acts or from silence, it may be possible to hold that there was sufficient reliance on the conduct such that the party is estopped from denying ratification. Id. § 40. Here, there was no question as to the meaning of Irwin's words consenting to deliver the 500 shares.

■ It is not necessary as defendants claim, that the ratifier have complete and full knowledge of all acts and circumstances surrounding the transaction. Rather, if the ratification is made with knowledge of the material facts, it is valid. Wing v. Lederer, 77 Ill.App.2d 413, 418, 222 N.E.2d 535 (1966). Here, Irwin was sufficiently aware of the transactions involving the purchase and sale of National Video shares to know the nature of the conduct he was ratifying, and he should be held responsible for his promise. Meyer, The Law of Stock Brokers and Stock Exchanges, 408–12 (1932). Irwin's promise to deliver would be meaningless, if at the time the promise is made he is required to have full knowledge that he was short 500 shares.

■ Irwin contends that the damages should be based on the market price of the stock at the date the shares should have been delivered. Here, however, Irwin ratified the failure to require delivery and did not repudiate his promise until April 18, 1966.

■ Defendants also contend that since plaintiff agreed to keep the records of account and because of negligence failed to inform defendants that the shares were owed, plaintiff waives the right to demand the securities. Since defendants ratified the wrongful acts of the plaintiff, they cannot now assert the doctrine of waiver and estoppel.

■ Plaintiff cross-appeals from the denial of interest from date of the purchase by the plaintiff of 500 shares on April 18, 1966. Since this is an action under diversity jurisdiction, this Court must apply the Illinois law governing interest. Midstates Oil Corp. v. Waller, 207 F.2d 127, 131 (5th Cir. 1953).

Ill.Rev.Stat. ch. 74 § 2 provides:

Rate on money after due

Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment. 1879, May 24, Laws 1879, p. 184, § 2; 1891, June 17, Laws 1891, p. 149, § 1.

Plaintiff contends that the confirmation of the April 18, 1966, transaction sent to defendants constitutes an "instrument of writing." However, since there was no underlying agreement as to the purchase, the confirmation does not come within the statutory construction of "other instrument of writing." Ill.Rev.Stat. Ann. ch. 74, § 2, n. 51–100. Since there was no authorization to purchase the stock, the purchase price was not "ad-

vance for the use of another." There was no "settlement of account" since defendants did not admit to the owing of any stock on April 18. Underhill v. Gaff, 48 Ill. 198 (1868); Marrone v. Ehrat, 175 Ill.App. 649 (1912). Too, we do not think under the circumstances presented that the money was "withheld by an unreasonable and vexatious delay." Therefore, plaintiff is not entitled to interest from April 18, 1966, to the date of the judgment.

Affirmed.