# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2100

DELMAR GUSEWELLE,

*Plaintiff-Appellant,*

v.

CITY OF WOOD RIVER and THOMAS CHRISTIE,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02 C 94—**William D. Stiehl**, *Judge.*

———————

ARGUED FEBRUARY 23, 2004—DECIDED JULY 8, 2004

———————

Before BAUER, EASTERBROOK, and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* Delmar Gusewelle filed this action claiming: (1) that his employment was terminated in violation of the Age Discrimination and Employment Act (ADEA), and (2) that his property interest in his job created a right to a due process hearing which was not afforded prior to his termination. The district court granted Defendants' motion for summary judgment on both counts. Our review is de novo. We construe all facts and reasonable inferences in the light most favorable to the non-moving party.

## I. Background

Gusewelle was hired by the City of Wood River, Illinois, in 1981 as a golf course equipment mechanic. When hired, Gusewelle was living in the neighboring town of Edwardsville. The City of Wood River, however, maintains a residency requirement and Plaintiff was given one year to comply with the regulation. He initially tried to sell his Edwardsville home but was unwilling to do so on the offers he had received.

About one year after being hired, Gusewelle began staying at his aunt's house in Wood River two nights a week. Although he claims that this arrangement was "no secret," he did not specifically tell any city employee about his dual residency. When his aunt's house was sold, he "moved" to the family farm in Wood River. He had a 1/3 interest in the farm. He stayed there two nights a week also. Although his wife remained in Edwardsville, Plaintiff paid his state and federal income taxes, voted, and registered his car and driver's license using the Wood River address. This arrangement continued for a little under twenty years until he was terminated for violating the residency regulation. Prior to his termination, Plaintiff was considered to be an "excellent" and "outstanding" employee.

In his deposition, Gusewelle said that he had heard that Wood River Parks and Recreation Director Jeff Stassi said, "work him [Gusewelle] hard, keep him on his feet and don't let him sit down so he'll retire." This statement was made four years prior to Gusewelle's termination. Although Stassi denied making this statement, our standard of review requires that we accept Plaintiff's version. With that in mind, we continue the narrative.

In 1999 Stassi told the City Council that Gusewelle was proposing to retire at age 65—which would mean that he would retire that very year. Actually, Plaintiff had indicated that he would retire when he could no longer perform

his job. Also in 1999, Thomas Christie left his job in another town and was hired as Wood River's City Manager. The City Manager works for the City Council and is responsible for hiring and firing all employees not covered by the fire-and-police commission.

In January 2001, Stassi came to Christie with a "rumor" that Gusewelle was not abiding by the residency requirement. Stassi explained in his affidavit that, while he had no desire to "get rid of" Gusewelle, he felt that Christie was enforcing the City regulations equally and fairly. Christie sent a note to the Wood River Chief of Police to investigate the allegations. After conducting some surveillance of Gusewelle's home (presumably the Gusewelle family farm) and talking with Gusewelle's mail carrier, the chief of police sent Christie a note confirming the rumor of Plaintiff's dual residence. Christie sent Gusewelle a show-cause letter that raised the violation of the residency requirement. After Gusewelle received the show cause letter an administrative hearing was held.

At the hearing, Plaintiff admitted that he stayed in Wood River only two days a week and that he only paid 1/3 of the property taxes on the Wood River farm. Christie's report to the City Council on the administrative hearing also noted that Gusewelle had signed an acknowledgment form stating that he was aware of the Personnel Rules. Personnel Rule 12.3 details the residency requirement. Members of the City Council expressed some reservations about firing Gusewelle when "former City Managers and Parks and Recreation Directors [knew] of [Gusewelle's dual residency] for years." Nevertheless, the City Council authorized Christie to send a letter terminating Gusewelle's employment.

After being terminated, Gusewelle reapplied for the job promising to comply with whatever "the new or revised definition of residency" required. His offer was rejected. When Christie was asked why the City chose not to rehire

Gusewelle, he said, "[b]ecause the violation had already occurred." When asked why the City did not give Gusewelle another opportunity to move into Wood River, Christie responded, "[b]ecause he had been terminated for violation of . . . the code. How would I have any feeling that that code would not be violated again?" Wood River eventually replaced Gusewelle with an employee about twenty-five years younger than Plaintiff.

The district court granted summary judgment in favor of the Defendants. In it's March 24, 2004 Memorandum & Order, the lower court judge found that Gusewelle had failed to show a genuine issue of material fact "on the question of whether defendants' proffered reason for plaintiff's termination is pretextual." The court then ruled against Plaintiff's due process claims by finding: (1) Gusewelle was an at-will employee and therefore, had no protectable property interest in his job, (2) there was no evidence that the City changed its definition of "residency" without prior notice, (3) Gusewelle was afforded procedural due process in the form of a formal administrative hearing prior to termination, (4) the residency regulation was not unconstitutionally vague, and (5) the regulation was not arbitrary or unreasonable municipal action. The instant appeal followed.

## II.  Discussion

### A.  Discrimination Claim

A plaintiff with a potential age discrimination claim can avoid summary judgment in one of two ways. The direct method states facts that show that the employer's decision to take adverse employment action against the plaintiff was motivated by an impermissible factor such as age, race, or national origin. Such facts can be in the form of direct or circumstantial evidence. "Direct evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rogers v.*

*City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). Circumstantial evidence must be sufficient to create a "convincing mosaic" that "allows a jury to infer intentional discrimination by the decision-maker." *Id.*

The indirect method, on the other hand, requires the plaintiff to first make a prima facie showing of discrimination. *Steinhauer v. Degolier*, 359 F.3d 481, 484 (7th Cir. 2004). To do this, a plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) a similarly situated employee not of the protected class was treated more favorably. *Steinhauer*, 359 F.3d at 484; *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003). Once a plaintiff has made a prima facie showing of discrimination, the burden shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Steinhauer*, 359 F.3d at 484. If the employer can do so, the burden shifts back to the plaintiff to present sufficient evidence to show that the employer's proffered reasons are merely a pretext for discrimination. *Id.*

### 1. Direct Method

The district court found that Gusewelle had introduced no evidence of discrimination sufficient to defeat summary judgment based upon the direct method. The parties make no argument otherwise and we find no error in this ruling.

### 2. Indirect Method

Gusewelle was sixty-seven years old when he was fired, and age is a protected class. It is undisputed that he was qualified for the job; he was considered to be an "outstanding" or "excellent" employee. There is certainly no dispute that Gusewelle suffered an adverse employment action— he was fired. Finally, plaintiff was replaced by a man twenty

five years his junior. Although there may be some question as to whether Gusewelle satisfied the "similarly situated" element, we will assume that these facts allowed Gusewelle to clear the first hurdle to prevent summary judgment and that they established a prima facie case of discrimination. With this showing, the burden then shifted to Defendants to articulate a non-discriminatory reason for the termination.

Wood River claims that Gusewelle was fired for violating the residency requirements of his employer. This assertion was well-supported. Therefore, following the indirect method's outline, the burden shifted back to the plaintiff to introduce evidence to show that the employer's articulated reason was merely a pretext for discrimination. "To show that an employer's proffered reason is pretextual, a plaintiff must do more than demonstrate that the employer made a mistake . . . . Instead, the plaintiff must demonstrate the employer's reason is unworthy of belief." *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 677 (7th Cir. 2002). To this, the plaintiff may show: "(1) the proffered reasons are factually baseless, (2) the proffered reasons were not the actual motivation for the discharge, or (3) the proffered reasons were insufficient to motivate the discharge." *Id.*

### B.  Pretext and Related Issues

#### 1.  Knowledge of Plaintiff's Residency

Gusewelle supports his pretextual argument by asserting that his dual residency was no secret and that "everybody knew about it." This argument really is that the City, by its knowledge, ratified the arrangement. However, there is no evidence that any specific individual knew about the Plaintiff's living arrangements. The one comment which would seem to support Gusewelle's position comes from the minutes of a closed City Council meeting. The minutes report that Wood River's mayor expressed some concern that former City Managers and Parks and Recreation Directors

knew of Gusewelle's living arrangements and did nothing about it. No one at the meeting contradicted what the mayor had said. While Gusewelle calls these facts a smoking gun, we are not so persuaded. There is no evidence that any of the current City Managers or City Council members had prior knowledge of Gusewelle's residency arrangements. In fact, there is no evidence in the record that shows that any *specific* individual, much less a decision-maker, knew of Gusewelle's living arrangements until Stassi told Christie of the "rumor" that Gusewelle did not live in the city of Wood River. Therefore, without demonstrable knowledge of the arrangement the argument fails to show ratification. *See Dempsey-Tegeler & Co. v. Irwin*, 415 F.2d 1348, 1351 (7th Cir. 1969) (stating that knowledge of material facts is sufficient to ratify).

### 2. Stassi's Comments

Gusewelle argues that the statement attributed to Stassi also supports his discrimination claim. Stassi said to keep the Plaintiff on his feet so that he would retire. Gusewelle learned of Stassi's statement secondhand. But Stassi was not a decision-maker, so whether he made the statement or not is irrelevant. *Koski*, 307 F.3d at 677; *Cerutti*, 349 F.3d at 1066. There is no dispute that Christie and the City Council were the parties responsible for terminating the Plaintiff. Indeed, Christie stated that he was responsible for hiring and firing all employees not covered by the police-and-fire commission. The same analysis applies to Stassi's false comment that Gusewelle planned to retire at age sixty-five.

### 3. Christie's Credibility and Police Investigation

Gusewelle claims that Christie's credibility has been "fatally undermined by his testimony regarding the 'investigation' into the residency question." When asked why

he requested the police to investigate, as opposed to just questioning Gusewelle about his living arrangements, Christie responded that he "did not want to make—cause Mr. Gusewelle embarrassment." Gusewelle claims that this explanation is "so preposterous and unbelievable that it calls into question the integrity of all of Mr. Christie's testimony." We disagree. By itself, the reason may seem somewhat thin, however that was not all that Christie said. He added, "[i]f indeed this was simply a scurrilous rumor that had no basis, there was no need of upsetting Mr. Gusewelle by asking him that question." Furthermore, earlier in the deposition Christie testified, "in order to be completely unbiased and fair, I thought that an investigation was warranted by a third party."

Gusewelle also attacks Christie's stated reason for initiating a police investigation, as opposed to simply asking Gusewelle about his residency, by noting that the investigation was "intrusive." Such an argument assumes that this court concerns itself with the propriety of business decisions. "We do not sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision. Our only concern is whether the legitimate reason provided by the employer is in fact the true one." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) (citation removed). And as we have already found, Christie's reasons for having the police investigate the matter seem quite reasonable and believable. The stated reasons do not support a finding of pretext.

### 4. Grace Period

Gusewelle finds pretext for discrimination in the City's refusal to allow him a grace period to comply with the residency requirement. The problem with this argument is that Wood River Personnel Rule 12.3 says that one who

violates the regulation "shall be terminated." Abiding by the terms of the ordinance is not evidence of pretext. (Although, he was given a one-year grace period at the time he was hired. He failed to take advantage of it.)

### 5. Rehiring

As to why the City did not consider rehiring Gusewelle after he promised to comply with the residency requirements, Christie testified, "[w]e didn't think that was proper. . . . Because he had been terminated for violation of the—of the code. How would I have any feeling that that code would not be violated again?" This is a legitimate, non-discriminatory reason even assuming that Gusewelle had a right to be rehired.

### 6. Qualifications

Gusewelle's arguments based on his excellent qualifications to perform his job are interesting but not significant. The City does not dispute that Gusewelle was an outstanding employee and they did not fire him because of poor performance. The City fired him for failing to comply with the residency requirements and his qualifications have no bearing on the issue of residency.

### 7. City's Reasonable Belief that Plaintiff Violated Residency Requirement

Plaintiff's brief argues that he was not in violation of the residency requirement. The question, of course, is whether the decision-maker honestly believed he was in violation of the requirement. *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368-69 (7th Cir. 1998). Nevertheless, the evidence of this case and the law cited in the parties' briefs indicates that Gusewelle was in violation of the residency requirement.

According to City of Wood River Personnel Rules 12.3, "[a]ll employees must reside within the City limits within twelve (12) months after employment. If a City employee chooses to move outside of the city limits, that employee shall be terminated." The Personnel Rules also define "resident" as "[a] person whose primary residence lies within the corporate limits of the City of Wood River." Even though it is not found in the text of Rule 12.3, it appears that the City read the definition of "resident" into the meaning of "reside" as found in Rule 12.3. Such a reading is reasonable when viewed in light of the commonly accepted definition of "reside." Merriam Webster's Collegiate Dictionary, Tenth Edition, defines reside as "to dwell permanently or continuously: occupy a place as one's legal domicile." Therefore, the City's belief that their Rules required Gusewelle to maintain his *primary* residence in Wood River is sound.

Gusewelle attempts to support his claim that his primary residence was in Wood River, not in Edwardsville, by citing to Illinois case law. He quotes *Figiano v. Police Board*: "[a] person's 'residence' is the place where a person lives and has his true, permanent home, to which, whenever he is absent, he has an intention of returning." 456 N.E.2d 27, 29 (Ill. 1983). Gusewelle points out that he paid taxes, registered his car and driver's license, and voted using his Wood River address. This, he says, is enough to show his intent to 'reside' in Wood River. We disagree, but more to the point, the City disagreed. Gusewelle lived in Wood River a mere two nights a week, and, as the City states, "[f]ive nights a week is greater than two." What tips the balance in favor of Gusewelle being a resident of Edwardsville, as opposed to Wood River, is the fact that his wife continuously resided in Edwardsville. There is nothing in the record which would indicate that the Gusewelles' marriage was deteriorating. We find it extremely hard to believe that Plaintiff, when away on vacation, intends to return to Wood River as opposed to the marital home in Edwardsville. Based on all

of this evidence and a reasonable reading of the Rules, there is nothing to indicate that the City did not, in fact, believe that Gusewelle was in violation of the residency rule.

### 8.  Plaintiff's Honesty

One final issue on the question of pretext should be addressed. Although neither party addresses the question of Gusewelle's honesty as a separate issue, it finds its way into many of the arguments—Gusewelle says he was honest throughout his career and the City says he lied throughout his career. Both positions have *some* merit. The facts show that Gusewelle never affirmatively lied. However, his statements about residency were misleading. He reported that he had moved to Wood River and gave an address. What he did not say was that he had moved to Wood River for a mere two nights a week. There is a strong suggestion that the reason Gusewelle never explained in full his residency was that he thought he was getting away with something. Regardless of whether he actually was dishonest, the City was entitled to believe that his credibility was limited.

Taken individually or in the aggregate, the arguments that Gusewelle makes do not support a finding of pretext. He has not shown that the City's proffered reasons for the termination were factually baseless, insufficient to motivate the discharge, or not the actual motivation for the discharge.

### C.  Property Interest in Employment and Due Process

The district court's March 24, 2004 Memorandum & Order lays out a detailed and thoughtful analysis on the issue of whether Gusewelle had a protectable property interest in his job—he did not. The analysis noted that there was no employment contract—neither an express contract nor implied contract rights created through the

Personnel Rules Handbook. Plaintiff does not spend any time in his brief specifically refuting the judge's findings, merely arguing that the lower court overlooked Christie's testimony that all Wood River employees are given due process prior to termination. We find no error in the district court's holding. However, in an abundance of caution, we will consider the issue addressed to this court.

As stated above, the district court found Gusewelle to be an at-will employee. Plaintiff disputes this in this court by citing to Christie's deposition testimony where, so Gusewelle says, Christie said that all employees are *entitled* to due process. Gusewelle's undeveloped argument asserts that because employees are "entitled" to due process they must have a property interest in their employment. This is a mischaracterization of the record.

Contrary to Gusewelle's assertion, Christie never said that all employees were "entitled" to due process prior to termination—those were the words of Gusewelle's attorney. What Christie said was that the City attorneys "on other issues have always recommended to me, as well as to the council, that due process *should* be handled and afforded to everybody." (Emphasis added.) There is no use of words like "required" or "must." Due process was afforded to Gusewelle in an effort to be fair and cautious—not due to some entitlement to that process.

The other problem with Plaintiff's argument is the fact that he *did* receive an administrative hearing prior to being terminated. Even assuming a property interest in his job, he received some process. He cites no law and makes no argument that he was entitled to more process than he received. Without argument otherwise, we decline to hold that the district court's finding was error.

*D.  Residency Requirement's Rational Relationship to a
     Legitimate Governmental Interest.*

Gusewelle's final argument is that there is no rational relationship between the residency requirement and a legitimate governmental interest. Although undeveloped, the argument is based on the fact that no City Council member or City Manager could articulate a reason for having a residency requirement for a golf course mechanic. Put that way, it is hard to justify. But, "the burden is upon the challenging party to negative '*any reasonably conceivable* state of facts that could provide a rational basis for the classification.'" *Bd. of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 367 (2001) (emphasis added) (*quoting Heller v. Doe*, 509 U.S. 312, 320 (1993)). There are numerous conceivable reasons for retaining a residency requirement for government employees. One, discussed by Wood River's mayor, is that resident employees are available for work emergencies on short notice. Granted, there are probably not too many middle-of-the-night emergencies where a golf course mechanic would be needed, but it is not outside the realm of possibility. Furthermore, this court and others have repeatedly found that residency requirements are rationally related to a legitimate governmental interest. *E.g.*, *McCarthy v. Philadelphia Civil Serv. Comm'n*, 424 U.S. 645 (1976); *Andre v. Bd. of Trustees*, 561 F.2d 48, 50 (7th Cir. 1977); *Wardwell v. Board of Education*, 529 F.2d 625, 628 (6th Cir. 1976); *Fedanzo v. City of Chicago*, 775 N.E.2d 26 (Ill. App. 2002).

## III.  Conclusion

While we sympathize with Mr. Gusewelle's loss of his job, we do not find that his termination or the residency requirement that caused his termination create any legally cognizable claim for relief.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*