Kathleen **JOHNSON**, Plaintiff–Appellant,

v.

**PERNOD RICARD USA,**
Defendant–Appellee.

No. 04–2098.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 16, 2004.

Decided Dec. 17, 2004.

Freking & Betz, Cincinnati, OH, for Plaintiff–Appellant.

Robert M. Kelso, Kightlinger & Gray, Indianapolis, IN, for Defendant–Appellee.

Before RIPPLE, EVANS, and SYKES, Circuit Judges.

## ORDER

Kathleen Johnson quit her job as a forklift operator, and her employer, Pernod Ricard USA ("Pernod"), refused to rehire her. Consequently, she filed suit under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, for gender discrimination. The district court found that Ms. Johnson established a prima facie case of discrimination because she was similarly situated to a male employee who was rehired, but that she could not rebut Pernod's legitimate non-discriminatory reason for its actions. Ms. Johnson appeals, and for the following reasons we affirm the judgment of the district court.

## I

## BACKGROUND

Ms. Johnson began working as a laborer at Seagram & Sons, Inc., in Lawrenceburg, Indiana in 1998, and a year later became a forklift operator. In 2001 Pernod acquired the facility. On September 27, 2001, Ms. Johnson arrived at work and learned that the forklift that she had been using was not available because another employee had taken it. When she asked her supervisor about the protocol for forklift assignments, he replied that it was customary to keep the forklift to which one is first assigned and assigned her to another forklift. After accepting the new forklift, Ms. Johnson asked Bill Floyd, the lead dock person and her union steward, to clarify forklift protocol for her by the end of the day. When Floyd did not respond to Ms. Johnson's satisfaction, she jumped off her forklift, said "I quit," and left the facility. Floyd later told John Salvagne, the facility's human resources manager, that he told Ms. Johnson that she should not leave unless she talked to someone in management first. Ten days later, on October 7, 2001, one of Ms. Johnson's co-workers called her to tell her that she knew of someone who had "received a job back" and advised her to contact the union. R.38, Johnson Dep. at 56. The next day, Ms. Johnson met with Greyson Gray, the union president, to request assistance in getting her job back. A week later, Ms. Johnson filed a grievance, which Pernod denied at the first step of the grievance procedure. Pursuant to step two of the grievance procedure, Ms. Johnson and Gray met with Salvagne and Pernod's human resources director. At the meeting, Salvagne told Ms. Johnson that he could not rehire her, explaining that it would set a bad precedent. Ms. Johnson's union declined to pursue her grievance to the third step. Ms. Johnson filed a gender discrimination charge with the EEOC, and the EEOC dismissed the charge in May 2002.

Ms. Johnson then filed this lawsuit, alleging that Pernod discriminated against her based on her gender when it refused

to rehire her. Pernod moved for summary judgment, arguing that Ms. Johnson could not establish a prima facie case because, among other reasons, she could not show that any similarly-situated male employees were treated more favorably. In response, Ms. Johnson identified three men whom she claimed either quit or were fired by Pernod and were later rehired. The first man, Owen Cross, a laborer, was laid off and declined recall twice in 1996 and 1997 because he had found another full-time job. By refusing recall a second time, Cross lost his seniority. Cross later requested that the company rehire him, and it did. The second man, David Richter, a forklift operator, argued with his supervisor in August 2000 and left the facility a few hours before his shift ended. Before he left, he asked for an absence report, but his supervisor said that he did not need one. The next morning Richter met with Salvagne, who let him return to work because his supervisor had not told him that he could not leave. The third man, Thomas Johnson, a laborer, had been disciplined several times for leaving the plant without permission and for poor attendance. In November 1999, Salvagne informed Johnson that he would be serving a five-day suspension after his shift that day was completed. During his shift, Johnson loaded a railroad car improperly, and his supervisor told him to reload the car. Instead, Johnson left the plant, stating that he was already on suspension and did not care if he received further discipline for leaving without permission. Salvagne fired him for leaving work without permission. Johnson's union asked Pernod to rehire him and pursued the matter, requesting a meeting at the third step of the grievance procedure. Salvagne decided to rehire Johnson before that meeting because there was no evidence that his supervisor had instructed him not to leave.

The district court held that a similarly-situated person would be "someone who voluntarily quit his job at the Lawrenceberg facility and nevertheless retained his job." R.54, p. 12. The court found that Owen Cross was not similarly situated because he did not voluntarily quit his job, but was laid off and remained on recall status. Although David Richter left work, possibly without permission, the court found that he did not leave work with the intention of quitting and thus was not similarly situated. The court then held that Thomas Johnson was similarly situated, expressing its reluctance to dismiss Ms. Johnson's case at the prima facie stage: "[W]e shall accept that Mr. Johnson had no intention of returning to work until he asked the union to help him get his job back in order to consider him comparable to the plaintiff. The plaintiff has met her burden, however tenuously, of establishing a prima facie case." *Id.* at 13.

The court then held that Pernod's reason for not rehiring Ms. Johnson—that to do so would have set a precedent for employees to quit with impunity—was not pretext for discrimination. The court did not explain directly why rehiring Ms. Johnson would create a bad precedent, but rehiring Thomas Johnson, a problem employee, did not. The court stated, "more than just issues of personality determine employment decisions, namely, the economy, the personnel roster at the time, etc. We can only say that when Pernod Ricard chose not to rehire Ms. Johnson, the reason was not so outlandish as to suspect it is a lie." *Id.* at 15. The court then granted Pernod's motion for summary judgment.

## II

## DISCUSSION

We review the district court's grant of summary judgment de novo. *Franciski v.*

*Univ. of Chicago Hosp.,* 338 F.3d 765, 768 (7th Cir.2003). To establish a prima facie showing of discrimination under the indirect burden-shifting method outlined in *McDonnell Douglas,* a plaintiff must present evidence tending to show: (1) she was a member of a protected class; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) a similarly situated employee not of the protected class was treated more favorably. *See Gusewelle v. City of Wood River,* 374 F.3d 569, 574 (7th Cir.2004). Once a plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the employer does so, the burden shifts back to the plaintiff to present sufficient evidence to show that the employer's proffered reasons are merely a pretext for discrimination. *Id.*

To show that another employee is similarly situated, Ms. Johnson "must demonstrate that there is someone who is directly comparable to [her] in all material respects." *Grayson v. O'Neill,* 308 F.3d 808, 819 (7th Cir.2002). Where an employee claims that she was disciplined by her employer more harshly than another employee, she "must show that [she] is similarly situated with respect to performance, qualifications, and conduct." *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 617 (7th Cir.2000). "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 617–18.

On appeal, Ms. Johnson argues that the district court correctly found that Thomas Johnson was similarly situated, but for the wrong reason. In essence, she contends that she is similarly situated to Thomas Johnson because it would set an equally bad precedent to rehire each of them. Just because a company has reasons not to rehire two employees does not mean that those employees are similarly situated. Instead, we must determine if the employees engaged in similar conduct and whether there were circumstances that distinguished their conduct or the employer's reaction to that conduct. *See id.*

We recognize at least two differences between the circumstances and conduct of Thomas Johnson and the appellant here. First, no supervisor told Thomas Johnson not to leave when he left work before his shift ended. In contrast, Floyd, the lead dock person and union steward, told Ms. Johnson that she should check with management before leaving. Ms. Johnson did not meet with management before she left. Salvagne explained the distinction between employees who were told not to leave and those who were not: "These—in these other cases that were talked about, the person told the supervisor that they were leaving and the supervisor didn't do anything, didn't say they couldn't or they could. So the way I look at it, pretty much they gave that person permission to leave." R.38, Salvagne Dep. at 17. In essence, Salvagne refused to rehire Ms. Johnson because she disobeyed an order of a supervisor, but allowed Thomas Johnson to return because it was not clear that he disobeyed any orders. Ms. Johnson disobeyed an order while Thomas Johnson did not; thus, they were not similarly situated. *See Oest v. Ill. Dept. of Corr.,* 240 F.3d 605, 614 (7th Cir.2001) (employees not similarly situated where one officer refused to perform a search, while another officer merely complained about having to perform a search).

Ms. Johnson also was not similarly situated to Thomas Johnson because she quit her job and he did not. Floyd heard Ms.

Johnson say "I quit" when she left the plant, and Ms. Johnson did not even intend to try to get her job back until eleven days later when a former co-worker suggested that she should. In contrast, Thomas Johnson did not say that he quit when he left the plant. Salvagne said, "I was never given any indication that his intention was to quit." R.38, Salvagne Dep. at 20. Greyson Gray, the union president, did not think that Ms. Johnson had a good chance of getting her job back because she quit and did not pursue her grievance to the third step. R.38, Gray Dep. at 44. Because Ms. Johnson quit and Thomas Johnson did not, their conduct was different and therefore they were not similarly situated.

In order to establish a prima facie case of gender discrimination, Ms. Johnson needed to show that a similarly situated male was rehired. Ms. Johnson was unable to do so, because unlike the male employees she identified, including Thomas Johnson, she was told by her supervisor to check with management before leaving and she did not do so. She also said that she was quitting when she left the plant and did not return for eleven days. Because Ms. Johnson presented male employees whose circumstances differed in some material ways, she has not established a prima facie case of gender discrimination. Accordingly, we affirm the district court's judgment.