Russell D. PURDY, Appellant–
Petitioner,

v.

WRIGHT TREE SERVICE, INC.,
Appellee–Respondent.

No. 49A05–412–CV–642.

Court of Appeals of Indiana.

Oct. 4, 2005.

Randal M. Klezmer, Indianapolis, for Appellant.

Alan L. McLaughlin, Susan W. Kline, Indianapolis, for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Russell Purdy appeals the trial court's entry of summary judgment in favor of his previous employer, Defendant–Appellee Wright Tree Service, Inc. (Wright), on his complaint for retaliatory discharge.

We affirm.

### ISSUE

Purdy presents one issue for our review, which we restate as: whether the trial court properly granted summary judgment in favor of Wright.

### FACTS AND PROCEDURAL HISTORY

Purdy was employed by Wright. In May 2002, Purdy was injured on the job, and reported the injury to Michael Williams, his crew foreman. However, based upon comments made by Williams, Purdy waited to make any further report or seek medical attention. After several days, Purdy was still in pain, and he asked Williams to inform the general foreman, Paul Forkell, that he needed medical attention. Purdy was sent for medical treatment and was restricted from returning to work. Wright placed Purdy on leave pursuant to the Family Medical Leave Act (FMLA). When the 12–week FMLA period had expired and Purdy was unable to return to work, he was terminated. Purdy filed a claim against Wright for retaliatory discharge, and Wright filed a motion for summary judgment. The trial court granted Wright's motion, and this appeal ensued.

### DISCUSSION AND DECISION

Purdy contends that the trial court erred by granting summary judgment in favor of Wright with regard to Purdy's claim for retaliatory discharge. Specifically, Purdy asserts that summary judgment was improper because the evidence reveals a genuine issue of material fact as to whether Wright has an ascertainable, neutrally applied absenteeism policy; whether that policy, if it exists, is merely a device to restrain Wright employees from filing worker's compensation claims; and whether the remarks of a Wright foreman constitute an impermissible threat of discharge.

■ Our standard of review for a trial court's grant or denial of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Illiana Surgery & Medical Center, LLC. v. STG Funding, Inc.*, 824 N.E.2d 388, 396 (Ind.Ct.App.2005). Appellate review of a summary judgment motion is limited to those materials designated to the trial court.[1] *Illiana*, 824 N.E.2d at 396. We do not reweigh the designated evidence, *Metal Working Lubricants Co. v. Indianapolis Water Co.*, 746 N.E.2d 352, 355 (Ind.Ct.App.2001); rather, all facts and reasonable inferences drawn therefrom are construed in favor of the nonmovant. *Illiana Surgery*, 824 N.E.2d at 396. A grant of summary judgment may be affirmed upon any theory supported by the designated evidence. *Metal Working*, 746 N.E.2d at 355. Further, we carefully review the granting of summary judgment to ensure that a party was not improperly denied its day in court. *Illiana Surgery*, 824 N.E.2d at 396.

■■ In Indiana, if there is no definite or ascertainable term of employment, the employment is at-will, and the employer may discharge the employee at any time with or without cause. *Coutee v. Lafayette Neighborhood Housing Services, Inc.*, 792 N.E.2d 907, 911 (Ind.Ct.App.2003), *trans. denied*, 812 N.E.2d 794 (Ind.2004). There are three exceptions to the employment-at-will doctrine, one of which is a public policy exception. *See id.* (listing the three exceptions to employment-at-will doctrine). The public policy exception was established by our supreme court in *Frampton*

*v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973). There, the court held that when an employee is discharged solely for exercising a statutorily conferred right, an exception to the general rule of at-will employment is recognized. *See id.* at 428. The statutory right involved in both *Frampton* and the instant case is the right to file a claim for worker's compensation. The *Frampton* court established that an action for retaliatory discharge exists when an employee is discharged for filing a worker's compensation claim. The court further stated that the issue of retaliation is a question for the trier of fact. *See id.; see also Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1261 (Ind.Ct.App. 2002).

■ In order to be successful on a claim for retaliatory discharge, a plaintiff must demonstrate that his or her discharge was solely in retaliation for the exercise of a statutory right. *See Smith v. Electrical System Div. of Bristol Corp.*, 557 N.E.2d 711, 712 (Ind.Ct.App.1990); *see also Frampton*, 297 N.E.2d at 428. We have further explained that use of the word "solely" by the *Frampton* court means only that any and all reasons for the discharge must be unlawful in order to sustain the claim for retaliatory discharge. *See Markley Enterprises, Inc. v. Grover*, 716 N.E.2d 559, 566 (Ind.Ct.App.1999); *Dale v. J.G. Bowers, Inc.*, 709 N.E.2d 366, 369 (Ind.Ct.App.1999). Additionally, where retaliation is at issue, summary judgment is only appropriate when the evidence is such that no reasonable trier of fact could conclude that the discharge was caused by a prohibited retaliation. *Powdertech*, 776 N.E.2d at 1262. Thus, to survive a motion for summary judgment in

---

1. On a practical note to these litigants in particular and all practicing appellate counsel in general: because this Court reviews those materials specifically designated to the trial court, counsel should include in its materials on appeal all the materials designated to the trial court.

a *Frampton* case, an employee must show more than a filing of a worker's compensation claim and the discharge itself. *Id.* The employee must present evidence that directly or indirectly supplies the necessary inference of causation between the filing of a worker's compensation claim and the termination. *Id.* For example, evidence of the proximity in time between the filing of the claim and the termination, or evidence that the employer's asserted lawful reason for discharge is a pretext can provide the necessary inference of causation needed to rebut a summary judgment motion. *Id.*

This Court has recently outlined the three steps of a retaliatory discharge claim. First, the employee must prove, by a preponderance of the evidence, a prima facie case of discrimination. *Powdertech,* 776 N.E.2d at 1262 (*citing Dale,* 709 N.E.2d at 370 n. 3). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the discharge. *Id.* Finally, if the employer carries that burden, the employee can prove, by a preponderance of the evidence, that the reason offered by the employer is a pretext. *Id.* This can be done by showing, for example, that the employer's proffered reason is factually baseless, is not the actual motivation for the discharge, or is insufficient to motivate the discharge. *Id.*

With these factors in mind, we review Purdy's claim of retaliatory discharge. Purdy alleged that he had been discharged from his employment at Wright in retaliation for his filing of a worker's compensation claim. Wright responded that Purdy was discharged because he had exhausted all available leave but remained unable to work because he did not yet have a full medical work release.[2] By so doing, Wright fulfilled its burden to articulate a legitimate, non-discriminatory reason for the discharge. The burden then shifted to Purdy to establish that the explanation offered by Wright is a pretext.

In order to establish that Wright's explanation is merely a pretext, Purdy designated the absenteeism policy as set forth in Wright's Employee Handbook. The Employee Handbook states as follows:

**Absenteeism Policy**

In order to keep the flow of work going smoothly and provide stability of our work force to the Customer, Wright Tree Service has an Absenteeism Policy, which applies to all personnel. The policy is as follows:

Continued absenteeism or lateness for available work will result in disciplinary action or discharge.

Any employee that is unable to report for work on any given work day must notify his or her General Foreman two (2) hours prior to crew starting time. The first violation will result in a warning letter. Continued violations will result in disciplinary action or discharge.

Any employee who is absent for three (3) consecutive work days and fails to notify his or her General Foreman will be subject to immediate dismissal.

Exhibit 1 to Supplemental Affidavit of Chapman, Tab 2 of Supplemental Designation in Support of Defendant's Motion. In addition, the Employee Handbook contains a page entitled "Your Rights under the Family and Medical Leave Act of 1993" that states the eligibility requirements for employees, and explains the applicable rea-

---

**2.** When Wright discharged him, Purdy had exhausted the twelve-week FMLA leave to which he was entitled. The FMLA requires covered employers to provide up to twelve weeks of unpaid, job-protected leave to eligible employees for certain family and medical reasons. *See generally* 29 U.S.C. § 2611, *et seq.*

sons for taking leave and the benefits and protection provided to those employees who take a leave pursuant to the FMLA.

Additionally, Purdy designated portions of the deposition of Kendra Julie Chapman, Wright's Director of Human Resources. Through the discovery process, Purdy had requested Wright to produce all documents for employees who had suffered an injury or illness, whether work related or not, and who were off of work due to the injury or illness. Chapman was then asked questions regarding these documents during her deposition. In order to show that Wright's stated policy is merely a pretext, Purdy points to Chapman's discussion of three specific employees. First, James Blevins was an employee who was injured and was sent a form indicating that he was eligible for FMLA leave when, in actuality, he was not. In her deposition, Chapman explained that Blevins was mistakenly sent the form when she received incorrect information regarding FMLA eligibility requirements from the local Department of Labor office.

Second, Purdy identified an instance regarding Ken Mead, which he believes indicates Wright's lack of a uniformly enforced absence policy. When Wright employees are terminated or discharged, they are given a Notice of Separation form indicating the reason they are being discharged. In the section that states, "Explain fully the separation," Ken Mead's Notice of Separation asserts "alleged work comp injury." Exhibit 10, Designation in Support of Plaintiff's Brief. When Chapman was questioned regarding this statement, she explained that it was simply a mistake by the Wright foreman who filled out the Notice and knew that Mead was off of work due to a work-related injury.

Finally, Purdy claims that Wright's treatment of Chris Henry is evidence that Wright's use of the FMLA is a device to discourage employees from exercising their rights under the worker's compensation statutes. Chapman testified that all Wright employees who are placed on FMLA leave are sent a FMLA form at the beginning of the leave period and that Chris Henry was no exception. However, Purdy submitted as part of its designated evidence, the affidavit of Chris Henry. In his affidavit, Henry avers that he never received notice from Wright that he was being placed on FMLA leave and that he did not know he had been placed on FMLA leave until he was discharged because he had exhausted his leave under the FMLA and did not have a full medical release to return to work. Henry Affidavit, Exhibit 12 of Designation in Support of Plaintiff's Brief at ¶¶ 4 and 5.

Not only do these instances not evidence exceptions to Wright's policy regarding employees who cannot return to work after exhausting their FMLA leave entitlement, but also these minor inconsistencies do not create genuine issues of material fact that Wright's reason for Purdy's discharge was pretextual. When reviewing retaliatory discharge cases on appeal, we do not take on the role of a "super-personnel department" that reexamines an entity's business decisions; rather, our inquiry is limited to whether the employer gave an honest explanation for its decision. *Powdertech, Inc.*, 776 N.E.2d at 1260. Stated another way, the issue of pretext does not concern the appropriateness of the reasons offered by the employer for its employment decisions. The court need only address the issue of whether the employer honestly believes in the explanation it offers. *Id.*

The designated evidence indicates that since January 2000, Wright has applied a leave policy consistent with the parameters of the FMLA and that Purdy was treated no differently. If a Wright employee is

away from work due to the employee's injury or illness and the employee is entitled to FMLA leave, Wright permits the employee an unpaid, job-protected leave of absence for the duration of the FMLA leave available to that particular employee. Chapman Affidavit, Tab 3 of Designation in Support of Defendant's Motion at ¶ 5. If, after exhausting all available FMLA leave, the employee is unable to return to work, and if a brief extension of unpaid leave would not be required as a reasonable accommodation under the Americans with Disabilities Act ("ADA") or equivalent state law, Wright discharges the employee from employment. Chapman Affidavit, Tab 3 of Designation in Support of Defendant's Motion at ¶ 5; Chapman Deposition, Tab 1 of Supplemental Designation in Support of Defendant's Motion at p. 33. Chapman further averred that this policy applies equally to those employees who receive worker's compensation benefits as a result of their injuries, as well as those who suffer non-work related injuries or illnesses. Chapman Affidavit, Tab 3 of Designation in Support of Defendant's Motion at ¶¶ 5 and 6. Chapman also stated that if the discharged employee's health condition later improved to the extent that the employee can perform the essential functions of an available job, the employee can apply to Wright for rehire. Chapman Affidavit, Tab 3 of Designation in Support of Defendant's Motion at ¶ 5.

The designated evidence further reveals that Chapman mailed to Purdy a FMLA notice form and informed him that his absence from work for his work-related injury would be considered FMLA leave and would last until August 2, 2002. Chapman Affidavit, Tab 3 of Designation in Support of Defendant's Motion at ¶ 11. Purdy does not dispute that he received a FMLA form and, in fact, designates the form as evidence in this proceeding. *See* Exhibit 3 of Designation in Support of

Plaintiff's Brief. Purdy exhausted all of his available FMLA leave and was unable to return to work, so Wright discharged him. The designated evidence shows that Purdy was treated the same as other Wright employees who were injured, whether work related or non-work related, and who were unable to return to work at the end of their FMLA leave. Purdy designates no evidence that disputes this.

Additionally, in her affidavit as well as her deposition, Chapman testified and provided supporting documentation that since January 1, 2000, Wright administratively discharged approximately 40 employees who were off of work due to a serious health condition and who, at the end of their twelve-week leave under the FMLA, were medically unable to return to work. Of that 40, 20 suffered work related injuries and 20 suffered injuries that were not work related. Of the 20 who were injured at work, 10 were rehired after their medical conditions permitted them to perform the essential functions of an available position and they reapplied. Supplemental Affidavit of Chapman, Tab 2 of Supplemental Designation in Support of Defendant's Motion at ¶¶ 4, 5, 6, 7 and 8. Notably, one of the 10 employees that were rehired by Wright was Chris Henry whose situation Purdy identified in his brief and designation to the court as evidence of discriminatory practices by Wright.

Based upon the evidence designated in this case, we determine that there is no genuine issue of material fact regarding whether Wright has a uniform, consistently applied absence policy and whether this policy is a device to restrict Wright employees from filing for worker's compensation benefits. We further find that Wright's reason for discharging Purdy is not a pretext for discrimination. Indeed, the cause of Purdy's discharge was not discrimination, but rather his medical ina-

bility, at the conclusion of his FMLA leave period, to return to work. *See Smith v. Electrical System Div. of Bristol Corp.,* 557 N.E.2d 711 (Ind.Ct.App.1990) (finding that Smith's discharge was not in retaliation for her filing of worker's compensation claim; rather, she was discharged for excessive absence, which penalty would have been incurred, based upon company's absence control policy, even had she decided to take unpaid leave).

■ Purdy also avers that comments made to him by his foreman constitute a threat of discharge. In its order granting Wright's motion for summary judgment, the trial court found these comments to be "stray remarks" not relevant to Purdy's discharge. Our state appellate courts have not previously addressed the issue of whether certain comments made in the work environment constitute stray remarks within the realm of *Frampton* cases. The trial court based its decision on a federal case of retaliatory eviction [3] that involved stray remarks and stated that it did so because the court in *Frampton* analogizes retaliatory discharge to retaliatory eviction. *See Frampton,* 297 N.E.2d at 428. However, the court in *Frampton* was not discussing the similarity in the evidentiary requirements of retaliatory discharge and retaliatory eviction. Rather, it was speaking to the fact that retaliatory eviction, like retaliatory discharge, "offend[s] public policy." *Id.* Although we agree that this is an important analogy, for our purpose today we look to claims of discriminatory discharge in fashioning our decision because of the comparable factors used to analyze both the claims of retaliatory discharge and the claims of discriminatory discharge. *See Powdertech,* 776 N.E.2d at 1262; *see also Dale,* 709 N.E.2d at 370 n. 3. Therefore,

for guidance in reviewing the statements at issue in the instant case, we will look to federal cases of discriminatory discharge that involve stray remarks.

In *Hunt v. City of Markham, Illinois,* 219 F.3d 649 (7th Cir.2000), four white police officers brought suit against the city of Markham alleging race and age discrimination where the mayor and a majority of the city council, over which the mayor presides, were black. The officers alleged that the mayor and other black officials made repeated racist and "ageist" comments to or about the officers, such as "the city needed 'to get rid of all the old white police officers' "; " 'when are you going to quit so we can bring these young black men up?' "; and " 'it is the blacks' turn to self-govern in Markham, and if you are white, get out.' " *Id.* at 652. Further, at a city council meeting the mayor was reported to have said, " 'they are not worth anything,' " referring to three of the four plaintiffs. When a council member asked him if he was saying that because the officers were white, the mayor replied, " 'Maybe I am.' " *Id.* The federal court reversed the lower court's grant of summary judgment in favor of the city because the mayor was in a position to recommend action to the city council, the body that votes on issues such as denying raises to police officers and the body to whom the mayor made the discriminatory comments. The court stated that the fact that someone, who is not involved in the employment decision of which the plaintiff complains, expresses discriminatory feelings is not evidence that the decision had a discriminatory motivation. *Id.* However, the court noted that "[i]t is different when the decision makers themselves, or those who provide input into the decision, express [discriminatory] feelings (1) around the time

3. The trial court cites to *Harris v. Itzhaki,* 183 F.3d 1043 (9th Cir.1999) as the basis for its decision that the comments by a Wright foreman were merely stray remarks.

of, and (2) in reference to, the adverse employment action complained of." *Id.* An inference is then created that the decision makers were influenced by the discriminatory feelings in making their decision. *Id.*

One year later, the Seventh Circuit decided *Crabtree v. National Steel Corp.*, 261 F.3d 715 (7th Cir.2001). There, Crabtree brought an action against his former employer for age discrimination when the employer failed to rehire Crabtree after he had been discharged pursuant to a reduction in the workforce. The employer, National Steel Corp., decided not to rehire Crabtree due to his volatile and confrontational demeanor. The trial court entered judgment in favor of the employer, and Crabtree appealed. The appellate court affirmed the decision of the lower court, and specifically affirmed the lower court's exclusion of evidence of a statement by a supervisor. A National Steel Corp. supervisor told two employees who were both over the age of 40 that they " 'were too old to go with him through the millennium.' " The circuit court stated that the district court properly excluded evidence of the supervisor's statement because the comment was a stray remark. The court asserted that stray remarks made by non-decisionmakers are not evidence that the decision had a discriminatory motive. *Id.* at 723. Because the National Steel Corp. supervisor did not participate in the decision whether to rehire Crabtree and made the comment two years after the decision was made, it was a stray remark.

More recently, the Seventh Circuit decided the case of *Gusewelle v. City of Wood River*, 374 F.3d 569 (7th Cir.2004). There, Gusewelle alleged that his employment was terminated due to age discrimination. The district court granted the City's motion for summary judgment on Gusewelle's claims, and the circuit court affirmed the decision of the lower court.

Gusewelle was hired by the City of Wood River as a golf course mechanic. Although the position has a residency requirement, Gusewelle, who was living in a neighboring town at the time of hire, was given one year to comply with the requirement. Rather than selling his home in the neighboring town, Gusewelle began staying two nights a week at his family's farm, in which he had a 1/3 interest, in Wood River. He also paid his state and federal income taxes, voted, and registered his car and driver's license using the Wood River address for almost twenty years when he was terminated for violating the residency requirement. Prior to his termination, Gusewelle was considered to be an excellent employee. As part of his claim, Gusewelle asserted that Wood River Parks and Recreation Director, Jeff Stassi, had said in reference to Gusewelle, " 'work him hard, keep him on his feet and don't let him sit down so he'll retire.' " *Id.* at 573. This statement was made four years prior to Gusewelle's termination. Gusewelle claimed that the statement attributed to Stassi supported his claim of discrimination because it showed that the reason for his discharge, i.e., failure to comply with residency requirements, was merely a pretext. However, the City Manager and the city council were responsible for terminating Gusewelle. Therefore, because Stassi was not a decision-maker, whether he made the statement was irrelevant. *Id.* at 575. Thus, the court determined that Gusewelle had failed to demonstrate that the City's proffered non-discriminatory reason for his discharge was a pretext for discrimination.

In the present case, Purdy's Crew Foreman, Michael Williams, made certain comments to Purdy regarding his injury, which Purdy claims constitute a threat of discharge. Purdy testified at his deposition that when he reported his injury to Williams, Williams asked him if he was

sure he wanted to report the injury because there was "a possibility that Wright's might try to phase [Purdy] out." Exhibit 2, Designation in Support of Plaintiff's Brief, Purdy Deposition at p. 70. When Purdy asked Williams what he was referring to, Williams responded that because Purdy hurt his back, Wright's would get rid of him. *Id.* Williams has testified that when he talked to Purdy about being phased out, he was referring to his old employer, Asplundh, which was another tree service company. He stated: "Only thing I told [Purdy] if he worked at Asplundh he would get phased out. I don't know Wright's. I ain't been at Wright's that long." "I worked for Asplundh fifteen years. I know how they can scam a person, while Wright's I don't." Exhibit 9, Designation in Support of Plaintiff's Brief, Williams Deposition at p. 27.

Stray remarks may be evidence of intentional discrimination if they are sufficiently connected to the employment decision. *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 272 (7th Cir. 2004). In other words, the remarks must be made by the decisionmaker or those who influence the decisionmaker and must be made close in time to the adverse employment decision. *Id.* Here, the remarks were made by Williams, a Crew Foreman at Wright. However, the undisputed evidence shows that termination decisions at Wright are made by the corporate office. Chapman Deposition, Tab 1 of Supplemental Designation in Support of Defendant's Motion at p. 169. More particularly, Williams stated that as a crew foreman, he is not a member of Wright management, and he does not have the power to discharge an employee. Williams Affidavit, Tab 4 of Supplemental Designation in Support of Defendant's Motion at ¶¶ 3 and 4. Thus, Williams was a non-decisionmaker

and therefore his remarks were irrelevant to Wright's decision to discharge Purdy.

Moreover, Purdy was not discharged at a time in close proximity to the time the remarks were made. A few days after his injury, he asked Williams to report the injury to the General Foreman, Paul Forkell, who sent Purdy for medical treatment. Purdy was given treatment and received worker's compensation benefits. He was also placed on FMLA leave until his FMLA period expired and he was unable to return to work. At that point, Purdy was discharged. His discharge occurred approximately twelve weeks after the comments were made by Williams. Under these circumstances, as in the federal cases we discussed above, these remarks are stray remarks that are irrelevant to Purdy's termination. Thus, Purdy has failed to provide the requisite nexus between the statements made by Williams and his termination to demonstrate discrimination by Wright.

## CONCLUSION

Based upon the foregoing discussion and authorities, we conclude that the trial court properly entered summary judgment in favor of Wright. Purdy failed to show that his filing for and receipt of worker's compensation benefits was the sole reason he was discharged, as required in a *Frampton* claim.

Affirmed.

KIRSCH, C.J., and DARDEN, J., concur.