**John Paul JENKINS, Plaintiff,**

v.

**Erik K. SHINSEKI, Secretary of the Department of Veterans Affairs,[1] Defendant.**

**No. 07–CV–2235.**

United States District Court, C.D. Illinois, Urbana Division.

July 31, 2009.

---

1. The clerk will be directed to substitute Eric K. Shinseki, the current Secretary of the Department of Veterans Affairs, for James B. Peake, as the proper Defendant in this case.

John Paul Jenkins, Danville, IL, Pro Se Plaintiff.

David H. Hoff, Office of U.S. Attorney, Urbana, IL, for Defendant.

## OPINION

MICHAEL P. McCUSKEY, Chief District Judge.

This case is before the court for ruling on the Motion for Summary Judgment (# 54) filed, under seal, by Defendant, Eric K. Shinseki, Secretary of the Department of Veterans Affairs. This court has carefully reviewed the arguments of the parties and the supporting documents filed by Defendant. Following this careful and thorough review, Defendant's Motion for Summary Judgment (# 54) is GRANTED.

## FACTS [2]

On January 27, 1987, the Illinois Department of Rehabilitation Services sent a letter to the Danville Veterans Administration (VA) Hospital on behalf of Plaintiff, John Paul Jenkins, informing the VA Hospital that Plaintiff soon would be contacting them for possible employment. The letter stated that Plaintiff was born with cerebral palsy but that the "limited physical abilities with regards to cerebral palsy

---

2. The facts are taken from the Statement of Undisputed Facts set out by Defendant and the supporting documentation filed under seal in this court.

have been compensated for by physical therapy." The letter also stated that Plaintiff spent two years in military guard duty in Danville and spent 3½ months in the Army before being released due to a physical condition. The Danville VA Hospital hired Plaintiff as a housekeeping aid in March 1987. Plaintiff has worked as a housekeeping aid since that time and testified at his deposition that he has performed the physical requirements of the position without accommodation. His job duties include lifting, pulling and pushing while working with light cleaning equipment, operating light power equipment, bending and constant walking. Plaintiff testified that he is able to work nonstop except for two 15–minute breaks and a lunch break during the 8–hour work shift.

Plaintiff testified that, because he was born with cerebral palsy, he had two operations so he could walk. He testified that his left leg is ¾ inch shorter than his right leg and is also smaller. Because of this, Plaintiff walks with a limp. Plaintiff also testified that he is left handed and, because of his cerebral palsy and a fracture of his left hand in 1987 stemming from a car wreck, he has difficulty writing. Plaintiff testified that he has lived independently since he was 18 years old. He stated that he gets himself ready for work, does his own housecleaning and takes care of his residence, including mowing his yard, raking leaves and snow removal. Plaintiff has admitted that he is not limited in any major life activity.

Plaintiff testified that, in 1990 or 1991, an employee named George Foeher gave nicknames to Plaintiff and several other employees who were working the third shift. Plaintiff testified that he did not know of any factual reason Foeher used in selecting nicknames for VA employees including nicknaming Plaintiff "slow stroke." Plaintiff testified that he did not know how Foeher came up with the nicknames and did not know why he was called "slow stroke." Since 1991, Plaintiff has periodically been called by the name "slow stroke." There is no evidence that Plaintiff complained about the nickname to anyone prior to the complaint in this case.

In April 2005, Plaintiff was working second shift and submitted a written request to change to first shift. Plaintiff testified that he made the request because he had an opportunity for a second job, which was available during his second shift hours. He testified that he needed another job because he went through a divorce and needed extra income to make the mortgage payments on his farm. In response to Plaintiff's request, Marty Fellers, the general supervisor over housekeeping at the VA Hospital since 1997, wrote back, "Noted, will keep on file throughout 2005."

Plaintiff testified that, starting in August 2005, Paul Flick, a housekeeping aid supervisor who worked second shift, asked Plaintiff if he was sleeping with a female co-worker, Lisa Green, who Plaintiff testified was his fiancee at the time. Plaintiff testified that Flick made this kind of comment once or twice a week. Plaintiff testified that he viewed Flick's comments to be sexual harassment because Plaintiff "didn't appreciate it and the inappropriate ways that he said things." Plaintiff testified that, in October 2005, Flick asked him "Are you sleeping with Lisa Green yet?" Plaintiff testified that he essentially told Flick to drop it and stop making those comments. Plaintiff testified that Flick then stopped making the comments. In October 2005, Fellers was able to accommodate Plaintiff's request and Plaintiff was moved from second shift to first shift.[3]

---

**3.** Plaintiff testified that the transfer was in December 2005. However, Marty Fellers stated in his affidavit that Plaintiff was transferred to first shift in October 2005 and the employment records provided by Defendant

When Plaintiff moved to first shift, Flick was no longer his supervisor. In December 2005, Plaintiff submitted a written request to be moved back to second shift.

The Danville VA Hospital posted a Promotion Announcement with an opening date of January 26, 2006 and a closing date of February 15, 2006 for two housekeeping aid positions in the surgical and intensive care unit areas of the hospital. Plaintiff applied for the positions, which would be a promotion for him. Plaintiff testified that, on February 1, 2006, Flick called him "slow stroke" in front of his co-workers. Plaintiff also testified that Flick said he would make sure that Plaintiff did not get the position in surgery because he was "with her," referring to Lisa Green. Plaintiff was not chosen for either of the surgery positions. Plaintiff testified that Flick was not the selecting official but could only make a recommendation.

Fellers stated in his affidavit that he received the names of four equally qualified persons who had applied for the positions in surgery. Plaintiff's name was included on the list. Fellers stated that Plaintiff had the least seniority of the four persons listed. Fellers stated that he made the decision as to who would be given the promotions to the two open positions. Prior to making his decision, Fellers asked three housekeeping supervisors, Flick, Donald Calhoun and Harold Stuebe, to nominate two of the four persons to fill the positions. Fellers stated that they did not interview the candidates because he, Flick, Calhoun and Stuebe knew each of the four candidates due to their years of service at the Danville VA Hospital. Fellers stated that he did individually review the applications and attachments submitted by the four candidates, including a supervisory appraisal for promotion for each of the candidates. Fellers stated that he based his selection of the two persons

to fill the two surgical housekeeping positions on: (1) the fact that none of the three supervisors nominated Plaintiff for either position; (2) the fact that, in reviewing the supervisory appraisal for each of the four candidates, Plaintiff was the only one of the four candidates who received a rating of less than five in any of the categories; (3) the fact that Plaintiff had worked fewer years at the VA Hospital than the other three candidates; and (4) the fact that Plaintiff was the least dependable of the four candidates based upon records which showed that Plaintiff often needed to use leave because he came to work late. Plaintiff has admitted that he occasionally shows up late for work without calling in first.

Fellers stated that, in making his decision, he did not consider that fact that Plaintiff sometimes walked with a limp, which was the only physical disability he was aware that Plaintiff had. Flick and Calhoun stated in their affidavits that one of the reasons they did not nominate Plaintiff for either of the surgery positions was because he was the least dependable of the four candidates. Stuebe stated that one of the reasons he did not nominate Plaintiff for either position was because he believed that Plaintiff had the worst temperament of the four nominees. Flick stated that he did not take into consideration the fact that Plaintiff sometimes walked with a limp, which was the only possible physical disability he was aware of. Calhoun and Stuebe stated that they did not know or even suspect when making their recommendation that Plaintiff had cerebral palsy or any physical disability other than the fact that he sometimes walked with a limp. Flick also stated that, except for making his recommendation, he did not do anything to influence Fellers in his decision of which applicants to select for the positions.

show that Plaintiff began working first shift in October 2005.

While the Department of Veterans Affairs has an affirmative employment program for the hiring of persons with disabilities, there is no program or preference for the promotion of persons with disabilities.

In April 2006, there was some discussion about Plaintiff returning to second shift. On April 6, 2006, Flick sent an e-mail message to Fellers which stated, "John's request is dated 12–7–05. We don't have to honor at this time. Mum is the word." In his affidavit, Fellers stated that requests for a shift change are good for the calendar year in which they are submitted so Plaintiff's December 2005 request for a shift change naturally expired on December 31, 2005. Fellers stated that he received Flick's e-mail and interpreted it to mean that Plaintiff had not submitted a request in 2006 to return to second shift and it was best to leave everything as it was. In his affidavit, Flick stated that he added the language "mum's the word" to the e-mail "because if I had the choice, I would have preferred to not be tasked with supervising [Plaintiff] again." Plaintiff was eventually transferred to second shift on November 11, 2007, but has not been supervised by Flick since October 2005.

## PLAINTIFF'S CHARGE OF DISCRIMINATION

On February 13, 2006, Plaintiff made his initial contact with a VA Equal Employment Opportunity (EEO) officer and made two complaints: (1) that he was discriminated against on the basis of his physical disability when he did not receive a promotion; and (2) that he was the victim of sexual harassment on February 1, 2006. On March 17, 2006, Rafael Lobato–Martinez from the Department of Veterans Affairs Office of Resolution Management advised Plaintiff that he would be Plaintiff's EEO counselor concerning Plaintiff's complaints.

On April 21, 2006, Plaintiff signed his formal VA EEO complaint of discrimination. Plaintiff complained that he was discriminated against because of his physical disability, cerebral palsy. Plaintiff also complained of sexual harassment and reprisal for engaging in union activity. On May 22, 2006, EEO Counselor Lobato–Martinez prepared a report regarding Plaintiff's allegations. He summarized Plaintiff's complaints as:

Claim 1: Whether the aggrieved employee was discriminated against on the basis of Disability (Physical) with respect to Promotion/Non–Selection when on 3/15/06 the aggrieved employee became aware that he was not selected for the Housekeeping Aid, WG–3, position.

Claim 2: Whether the aggrieved employee was discriminated against on the basis of Disability (Physical) and Sex (Male) with respect to Sexual Harassment when on 2/1/06 the aggrieved employee became aware that his Foreman made comments of a sexual nature to and about him.

On June 7, 2006, the Office of Resolution Management for the VA sent Plaintiff a letter. The letter informed Plaintiff that an EEOC regulation required an aggrieved person to contact an EEO counselor within 45 days of the matter alleged to be discriminatory. The letter stated that, in some circumstances, time limits could be waived, but that they could not be waived "without an explanation of your untimeliness." The letter also stated that the formal complaint raised additional matters not included in his counselor's recitation of claims. The letter stated that these additional matters "related to working outside your pay grade, nonselection regarding positions you applied for over the past 19 years and disparate treatment with regard to shift changes and the granting of leave." The letter said:

Consequently, in order for us to properly process the instant complaint, you must provide a written statement clarifying whether the additional matters raised in the instant complaint are separate claims or background information. If the additional matters are intended to be separate claims, you must provide a written statement specifying the exact incident and the exact or approximate date of occurrence for each incident. If any of the incidents occurred outside the 45–calendar day requirement, you must provide a written statement explaining why you waited more than 45–calendar days to discuss the matter(s) with an EEO Counselor.

The letter informed Plaintiff that he needed to provide the requested information within 15 calendar days of his receipt of the letter. The letter stated that "[f]ailure to provide the exact information requested, or failure to respond at all within the time limit" may cause the dismissal of his complaint in whole or in part. At his deposition, Plaintiff testified that he understood "completely" that if he "failed to provide the exact information requested or failed to respond within the time limit as stated," that the VA Office of Resolution Management could dismiss or disregard the allegations in his complaint in whole or in part. The evidence shows that, during Plaintiff's employment at the VA Hospital, he had notice of the 45–day requirement for reporting claims of discrimination or harassment.

On June 16, 2006, Plaintiff submitted a response to the letter. Plaintiff's response was rambling and hard to understand and did not provide exact dates for any alleged occurrence and also did not include a statement explaining why Plaintiff waited more than 45 days to discuss with an EEO counselor any of the incidents that occurred outside the 45–day requirement. During his deposition, Plaintiff stated that some of the allegations included in his June 16, 2006, written response occurred between 1988 and 1998.

On July 14, 2006, the VA Office of Resolution Management sent Plaintiff a Notice of Partial Acceptance. The Notice stated that, based upon the allegations in Plaintiff's formal complaint and his June 16, 2006, response, it was determined that Plaintiff's formal administrative complaint raised the following claims:

Claim 1: Nonselection—Whether due to discrimination on the bases of disability (physical), reprisal (union steward), and sex (sexual harassment) on or about March 15, 2006, you were not selected for the position of Housekeeping Aid, WG–3 (first or second shift).

Claim 2: Sexual Harassment—Whether due to discrimination on the bases of disability (physical), reprisal (union steward), and sex (sexual harassment) on February 1, 2006, your supervisor asked you "if you were sleeping with your girlfriend."

Claim 3: Whether due to discrimination on the bases of disability (physical), and reprisal (union steward) you were harassed with respect to the terms and conditions of your employment as evidenced by the following incidents:

a. In early 2002, you were required to work outside your grade level without a temporary promotion under the term "intermittent" and under a fake social security number,

b. Beginning August 2005, You were denied a full-time job on the PM shift.

C. Beginning August 2005, your request for a shift change was denied and your vacation was taken away.

The letter stated that Claim 2 was not accepted for investigation because the conduct alleged was not "sufficiently severe or pervasive to constitute harassment," noting that an "isolated incident or a few isolated incidents are usually not sufficient to show harassment." The letter also stat-

ed that Claim 3 was not accepted for investigation "due to untimeliness as none of the incidents contained therein were brought to the attention of the EEO Counselor with[in] the 45–calendar day requirement." The letter stated that Claim 1 was accepted for investigation.

On July 26, 2006, Plaintiff sent an objection to the VA's Office of Resolution Management. Plaintiff objected to the dismissal of two of his claims and included a list of dates with no indication of the year and no indication as to what was alleged to have occurred on those dates.

On November 24, 2006, the Office of Resolution Management issued a seven-page investigative report. The report noted that Plaintiff stated that he does not have any medical restrictions as related to life's major activities and that management knew of his condition of cerebral palsy because he was hired under the handicap program 19 years ago. The report stated that Plaintiff claimed that he was the best qualified person for the positions in surgery because he had worked in the O.R. on the first and second shifts. The report also stated that Plaintiff connected his disability with being discriminated against "because management is supposed to promote qualified handicap[ped] employees and he is qualified." The report further noted that Management indicated that selection for the position was "based on experience, dependability and service computation date." The report also stated that there was no evidence to support Plaintiff's reprisal claim. On December 5, 2006, the Office of Resolution Management sent Plaintiff a notice advising him that he could either request a final VA decision or request that a hearing be conducted by the Equal Employment Opportunity Commission (EEOC). On December 18, 2006,

Plaintiff requested that the EEOC conduct a hearing in the case.

On January 4, 2007, the EEOC issued a scheduling order and authorized the parties to engage in discovery. The order stated that discovery had to be completed within 60 calendar days, or by March 5, 2007. The order also stated that the parties were required to initiate discovery by not later than February 3, 2007, and that requests for admissions, interrogatories and requests for production had to be limited to 30 questions. Plaintiff tendered discovery requests to counsel for the VA Hospital on February 22, 2007, which requested information about police officers Plaintiff spoke to, apparently regarding a conflict between him and Lisa Green. On March 1, 2007, Plaintiff delivered a 45–page discovery request containing 145 requests for admissions, 92 interrogatories and 30 requests for production. The VA Hospital objected to Plaintiff's requests and the EEOC entered an order stating that the VA Hospital was not required to respond to Plaintiff's untimely discovery requests.

On June 11, 2007, an Administrative Judge (AJ) of the EEOC issued a decision granting summary judgment in favor of the Danville VA Hospital. In the decision, the AJ noted that it had ordered Plaintiff to file a response to the VA Hospital's request for summary judgment and "explained the significance of the motion and warned him of the potential consequences if he failed to file a response and/or failed to identify sufficient evidence to show that a hearing was warranted." The AJ noted that, in response, Plaintiff filed several objections to the motion but "failed to adequately address the arguments" raised by the VA Hospital in its motion for summary judgment.[4]

---

4. This court notes that the responses filed by Plaintiff are rambling, difficult to read and somewhat incoherent. This court agrees completely with the EEOC's assessment that the responses did not adequately address the arguments raised by the VA Hospital.

In the decision, the AJ stated that Plaintiff was unable to maintain a *prima facie* case of disability discrimination because he was not considered "disabled" for purposes of the Rehabilitation Act. The AJ stated that, in order to maintain a case of disability discrimination, Plaintiff had to demonstrate that he is an "individual with a disability," which requires a showing that he "suffered from a physical or mental impairment that substantially limited a major life activity, has a record of having such an impairment or was regarded as having such an impairment." The AJ pointed out that merely having an injury or illness does not make an individual "disabled" even if the condition is supported by evidence of a medical diagnosis because the "impairment must have the effect of substantially limiting one or more major life activities." The AJ then noted that there was no evidence in the record to demonstrate that Plaintiff was under any restrictions or had any limitations. The AJ noted that Plaintiff did not dispute the VA Hospital's argument that he was not restricted in his ability to perform major life activities. The AJ further noted that both Fellers and Flick testified in their EEO affidavits that they noticed Plaintiff walking with a slight limp from time to time but there was no evidence to support an inference that they regarded him as having an impairment that limited his activities.

The AJ also concluded that Plaintiff could not maintain a case of reprisal discrimination because the facts of the case did not support an inference that he engaged in any activity protected by Title VII prior to his non-selection for a promotion. The AJ pointed out the Plaintiff's union steward activities did not constitute "protected activity" under Title VII. The AJ also concluded that, even if Plaintiff was able to maintain a *prima facie* case of disability and reprisal discrimination, the VA Hospital would still be entitled to summary judgment because Plaintiff failed to rebut its rationale for selecting two candidates with more seniority and experience than Plaintiff. The AJ stated that the VA Hospital "specified its reason for the selection decision that the selecting official relied on the candidates' level of experience, dependability and seniority." The AJ further stated that Plaintiff "did not offer any admissible evidence or identify any evidence in the record to demonstrate that the [VA Hospital's] reason is a lie to cover-up discrimination." On June 25, 2007, the Department of Veterans Affairs issued a final VA decision adopting the AJ's grant of the motion for summary judgment.

Plaintiff filed an appeal from this decision. On September 21, 2007, the EEOC issued its decision. The EEOC found that the grant of summary judgment was appropriate, as no genuine issue of material fact exists. The decision informed Plaintiff that he had the right to file a civil action within 90 days from his receipt of the decision.

## PROCEDURAL HISTORY

On December 14, 2007, Plaintiff filed a pro se Complaint (# 5) against Defendant.[5] Plaintiff alleged claims under Title VII of the Civil Rights Act of 1964[6] and the

5. Plaintiff also listed Marlon Fellers and Paul Flick as Defendants in the body of his pro se Complaint. This court subsequently entered an Order (# 29) which dismissed Flick and Fellers as named Defendants because the Secretary of the Department of Veteran Affairs is the only proper Defendant in this action. In the same Order (# 29), this court also denied

Plaintiff's Motion for Leave to File Amended Complaint (# 25), finding that Plaintiff's proposed Amended Complaint was written in a strange paragraph style which made it extremely difficult to read and was "essentially incomprehensible."

6. 42 U.S.C. § 2000e et seq.

Rehabilitation Act of 1973.[7] Plaintiff alleged discrimination on the basis of his handicap, reprisal and harassment. Specifically, Plaintiff alleged that he was subjected to harassment and sexual harassment, stating that Flick repeatedly called him "slow stroke." Plaintiff alleged that Flick was making fun of his cerebral palsy and also alleged that the name has sexual connotations. Plaintiff further alleged that Flick made sexual remarks regarding a co-worker from August 2005 to October 2005. Plaintiff also alleged that Flick said he would make sure that Plaintiff did not get a promotion or shift change. Plaintiff stated that he did not get the promotion or the requested shift change. Plaintiff then referred to Flick's e-mail which stated that they did not need to honor Plaintiff's request, "mum's the word." Plaintiff complained that he was denied discovery before the EEOC and further alleged that Defendant withheld a service connected disability exam and paperwork for over two years "because it would prove my case."

On April 29, 2009, Defendant filed, under seal, an 87–page Motion for Summary Judgment (# 54) with numerous supporting exhibits. Defendant argued that there were no genuine issues of material fact in this case and that it is entitled to judgment as a matter of law. Defendant attached the affidavit of David Stelzner, the Assistance Service Center Manager of the Chicago Regional Office of the Department of Veterans Affairs. Stelzner stated that he reviewed the Department of Veterans Affairs records and, as of the date of his affidavit, February 23, 2009, the "computer system reflects that [Plaintiff] never filed a disability claim with the Department of Veterans Affairs." Defendant also included other affidavits showing that Plaintiff has never submitted any applications for any type of veterans compensation or ben-

efits and has been advised that he was not eligible for any type of service connected benefits.

A Notice (# 115) was sent to Plaintiff the same day Defendant's Motion for Summary Judgment was filed. The Notice informed Plaintiff that a case-dispositive motion had been filed in his case. The Notice also stated:

> When a motion for summary judgment is made and properly supported, you may not simply rely upon the allegations made in your complaint. Rather, you must respond by affidavit(s) or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, a copy of which is attached. Your response must set forth specific facts showing that there is a genuine issue of material fact for trial. If you do not submit affidavits or other documentary evidence contradicting the defendants' assertions, the defendants' statement of facts will be accepted as true for purposes of summary judgment.

A copy of Rule 56 of the Federal Rules of Civil Procedure and a copy of Rule 7.1 of the Local Rules of the Central District of Illinois were attached to the Notice. Rule 7.1(D)(2)(b) specifically provides that a response to a motion for summary judgment should include a response to each numbered statement of undisputed facts.

On May 8, 2009, Plaintiff filed a pro se Objection to Summary Judgment (# 122). Plaintiff stated that his response was under oath, but did not include a response to any of the undisputed facts listed by Defendant or a list of specific facts which would defeat summary judgment. Plaintiff's response was essentially a diatribe of perceived injustices, many of which had little connection to the actual claims raised in Plaintiff's pro se Complaint (# 5).

---

**7.** 29 U.S.C. § 701 et seq.

On May 18, 2009, Defendant filed, under seal, a Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (# 120). Defendant argued that Plaintiff's Response should be disregarded because it did not comply with Rule 7.1(D)(2)(b) of the Local Rules of the Central District of Illinois. Defendant also, without waiving this argument, responded to each factual allegation in Plaintiff's Response.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To survive summary judgment, "there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This court must construe all facts in the light most favorable to Plaintiff, the nonmoving party. *See Jones v. City of Springfield*, 554 F.3d 669, 671 (7th Cir.2009). However, Plaintiff must point to specific facts showing there is a genuine issue for trial; inferences relying on mere speculation or conjecture will not suffice. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir.2008). Self-serving statements in affidavits without factual support in the record carry no weight for purposes of summary judgment. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir.2004); *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir.2001). Further, "[o]nly disputes over facts that might af-

fect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

### II. PLAINTIFF'S CLAIMS

#### A. PROMOTION CLAIM

■ This court initially notes that Plaintiff's pro se Complaint (# 5) is not a model of clarity. However, based upon the proceedings before the EEOC, this court construes the pro se Complaint as raising a claim that Plaintiff was denied a promotion to one of the housekeeping positions in surgery based upon his disability. This court has no difficulty in determining that Defendant is entitled to summary judgment on this claim because the evidence shows that Plaintiff is not disabled within the meaning of the Rehabilitation Act.[8]

■ The Rehabilitation Act, which applies to federal employees, and the Americans with Disabilities Act (ADA) "prohibit an employer from discriminating against a qualified individual with a disability because of the disability." *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir.2008), *quoting Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir.2005). To establish the first element of a prima facie case under the Rehabilitation Act, Plaintiff must prove that he falls within the ADA's statutory definition of "disabled," meaning that he has a "physical or mental impairment that substantially limits a major life activity, a record of such impairment, or [is] regarded as having such impairment." *Garg*, 521 F.3d at 736, *quoting* 42 U.S.C. § 12102(2); *see also* 29 U.S.C. § 705(20)(B) (effective November 13, 1998 to December 31, 2008). Because of the similarity between the pri-

---

8. This court notes that this 2007 civil case is governed by the applicable law pertaining to the Rehabilitation Act prior to the amendments imposed by the ADA Amendments Act of 2008 which took effect January 1, 2009, Pub. L. No. 110–325, 122 Stat. 3553. *See Budde v. Kane County Forest Preserve*, 2009 WL 736646, at *4 n. 4 (N.D.Ill.2009).

ma facie requirements under the Rehabilitation Act and the ADA, this court can look to case law under the ADA to determine whether Plaintiff can meet his prima facie burden. *Scheerer v. Potter,* 443 F.3d 916, 919 (7th Cir.2006). Merely having an impairment does not make one disabled for purposes of the ADA. *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). To be disabled under the applicable definition, an individual must demonstrate that the impairment limits a major life activity and that the limitation is substantial. *Toyota Motor Mfg.,* 534 U.S. at 195, 122 S.Ct. 681. Major life activities "means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Winsley v. Cook County,* 563 F.3d 598, 603 (7th Cir.2009), *quoting* 29 C.F.R. § 1630.2(i).

In this case, Plaintiff has admitted that he is not limited in any major life activity. In fact, the evidence shows that Plaintiff, despite the fact that he has cerebral palsy, has no difficulty performing the physical requirements of his housekeeping job and is able to take care of himself, including performing manual tasks such as housecleaning and yard work. Based upon the evidence presented, it is clear that Plaintiff does not have an impairment that substantially limits a major life activity and therefore is not "disabled" within the meaning of the Rehabilitation Act. The evidence also shows that Plaintiff does not have a record of such an impairment and is not regarded as having such an impairment. Accordingly, Defendant is entitled to summary judgment on Plaintiff's disability claim.[9]

■ This court additionally notes that, to the extent that Plaintiff is claiming that he was not promoted in reprisal for his union activity, Defendant is entitled to summary judgment as to this claim. Under Title VII, it is unlawful for an employer to retaliate against an employee for engaging in protected activity. *See Amrhein v. Health Care Serv. Corp.,* 546 F.3d 854, 858 (7th Cir.2008), *citing* 42 U.S.C. § 2000e–3(a). However, union activity is not protected activity under Title VII. *See Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park,* 490 F.3d 558, 563 (7th Cir.2007); *Butler v. Potter,* 2009 WL 804722, at *10 (E.D.N.Y. 2009); *Onofrei v. Gen. Sec. Servs. Corp.,* 2005 WL 3312599, at *9 (N.D.Ill.2005). Moreover, Plaintiff has not disputed that the union activity he has referred to occurred in 2003. This court completely agrees with Defendant that Plaintiff's participation in a step 3 union grievance in 2003 is too far removed from his nonselection for the positions in surgery in 2006 to support a claim of retaliation, even if union activity was protected under Title VII. *See Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 918–19 (7th Cir.2000) (facts insufficient to show retaliation where there was a three-month gap between filing of EEOC claim and date of recall decisions and no evidence connecting the two).

■ Furthermore, this court agrees with Defendant that Plaintiff's promotion claims fail because the evidence shows that Defendant had legitimate nondiscriminatory reasons for not selecting Plaintiff for the positions in surgery. Plaintiff had the least seniority of the four candidates for the position, had the lowest score on the appraisals, and was considered the least dependable of the four candidates. Plaintiff has not shown that the stated reasons were a pretext for discrimination. Plain-

---

9. This court notes that Plaintiff has not directly disputed the evidence presented by Defendant that Plaintiff has never filed a disability claim with the Department of Veterans Affairs. Therefore, there is no merit to Plaintiff's claim that Defendant has denied him an disability exam which would "prove" his claim.

tiff appears to be relying on Flick's alleged statements to show that he was not promoted because of discrimination. However, Plaintiff testified that Flick was not the selecting official for the positions in surgery, and Plaintiff has provided no evidence which calls Fellers' decision into question. Defendant is correct that, in the realm of employment law, pretext is defined as "a lie, specifically a phony reason for an action." *Walker v. Gen. Sec. Servs. Corp.*, 405 F.Supp.2d 896, 903 (N.D.Ill. 2005), *quoting Logan v. Caterpillar, Inc.*, 246 F.3d 912, 920 (7th Cir.2001). To show that an employer's proffered reason is pretextual, "the plaintiff must demonstrate the employer's reason is unworthy of belief." *Gusewelle v. City of Wood River*, 374 F.3d 569, 575 (7th Cir.2004), *quoting Koski v. Standex Int'l Corp.*, 307 F.3d 672, 677 (7th Cir.2002). Plaintiff has no such evidence of pretext. In fact, Plaintiff testified that he had the least seniority of the four candidates for the position and admitted that he occasionally was late for work without calling in first. Therefore, the evidence shows that Fellers could legitimately consider Plaintiff the least senior and least dependable of the four candidates for the position in making his promotion decision.[10]

### III. HARASSMENT CLAIMS

■ Plaintiff claims that he was a victim of harassment by his supervisor, Flick. Plaintiff testified that Flick made inappropriate comments about Plaintiff's relationship with a co-worker, Lisa Green, from August 2005 until October 2005. Plaintiff also claims that Flick called him "slow stroke" which amounted to harassment based upon sex and disability. This court agrees with Defendant that Plaintiff has

not shown he was subjected to actionable harassment.

First of all, this court agrees that Plaintiff has not shown that these comments by Flick were causally connected to his nonselection for promotion in March 2006. As noted previously, Plaintiff testified that Flick was not the selecting official for the positions and the evidence shows that Flick had no input into Fellers' decision other than being one of three housekeeping supervisors who made a recommendation.

■ Second, this court agrees that Plaintiff has not shown that the harassment was severe or pervasive. In order to establish a prima facie case for a hostile environment claim under Title VII, a plaintiff must show that: (1) he was subjected to unwelcome harassment; (2) the harassment was based on his sex; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir.2007); *see also Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir.2005). The threshold for plaintiffs is high, as "[t]he workplace that is actionable is one that is 'hellish.'" *Whittaker*, 424 F.3d at 645, *quoting Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir.1997).

■ To prove that his work environment was hostile, a plaintiff must demonstrate that it was both objectively and subjectively offensive. *Kampmier*, 472 F.3d at 941; *see also Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir.2005). That is, it must be a work environment that a rea-

---

**10.** Plaintiff appears to believe that he should have been given a preference because he has cerebral palsy and served in the military. However, Defendant has shown that it does not give such a preference when making promotion decisions and the law does not require such a preference.

sonable person would find hostile or abusive, and one that the plaintiff in fact perceived to be hostile or abusive. *See Ezell*, 400 F.3d at 1047–48; *Smith v. N.E. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004). The alleged harassment must be both subjectively and objectively so severe or pervasive as to alter the conditions of his employment and create an abusive work environment. *Whittaker*, 424 F.3d at 645. "Courts look to several factors to determine whether the alleged harassment is objectively offensive, including the frequency of the conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the alleged victim's work performance." *Kampmier*, 472 F.3d at 941. Title VII "do[es] not mandate admirable behavior from employers." *See Russell v. Bd. of Trs. of Univ. of Ill. at Chicago*, 243 F.3d 336, 343 (7th Cir.2001). Therefore, teasing, offhand comments, and isolated, non-egregious incidents are not sufficient to constitute sexual harassment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The Seventh Circuit has, on many occasions, distinguished between harassing and merely objectionable conduct. *Kampmier*, 472 F.3d at 941 (citing cases).

In this case, Plaintiff has complained that Flick called him "slow stroke" and made inappropriate comments regarding his relationship with Lisa Green between August 2005 and October 2005. This court concludes that the conduct complained of in this case clearly falls on the side of "teasing, offhand comments, and isolated, non-egregious incidents" which are not sufficient to constitute sexual harassment.

This court notes that Plaintiff testified that Flick stopped making the comments regarding Lisa Green when Plaintiff asked him to stop. In addition, there is no evidence that Plaintiff complained to anyone about the nickname "slow stroke." Accordingly, this court concludes that Plaintiff has not shown that Flick's comments were objectively or subjectively "so severe or pervasive as to alter the conditions of [his] employment and create an abusive work environment." *See Whittaker*, 424 F.3d at 645. This court therefore concludes that Defendant is entitled to summary judgment on Plaintiff's claims of harassment.[11]

### IV. REMAINING CLAIMS

 Plaintiff has complained that he was denied shift changes that he requested and testified at his deposition that he was prevented from taking a scheduled vacation in December 2005. The record clearly shows that Plaintiff did not report any of these alleged discriminatory acts within 45 days. Plaintiff has not disputed Defendant's evidence that he was aware of the 45–day requirement.

 The exhaustion of administrative remedies is required when the plaintiff is a federal employee. *See Doe v. Oberweis Dairy*, 456 F.3d 704, 712 (7th Cir.2006), *citing Hill v. Potter*, 352 F.3d 1142, 1145–46 (7th Cir.2003). Federal employees must file their discrimination complaints directly with the agency that employs them, rather than with the EEOC "so that judicial interference with the operation of the federal government will be minimized." *Doe*, 456 F.3d at 712. "That aim would be

---

11. This court notes that, to the extent that Plaintiff is now claiming that the use of the nickname "slow stroke" amounted to harassment because of his disability, Defendant is correct that Plaintiff failed to make this claim or argument during the EEO investigation. Therefore, this claim also fails for failure to exhaust administrative remedies. In addition, this court agrees that Plaintiff has not presented any evidence to show that the nickname "slow stroke" had sexual or disability connotations.

blunted if the employee could bypass the employer by not cooperating with him." *Doe*, 456 F.3d at 712.

In this case, Plaintiff filed a formal VA EEO complaint of discrimination. However, Plaintiff failed to provide information requested about some of his claims, which were stated in a vague and confusing manner. In addition, Plaintiff failed to comply with the requirement that an "aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Because of Plaintiff's failures, only Plaintiff's claim regarding his non-selection for promotion was accepted for investigation, including his claim that the non-selection was based upon sexual harassment. This court therefore agrees with Defendant that Plaintiff failed to present his other claims to his employer, as required, and has failed to exhaust his administrative remedies as to those claims. Therefore, those claims cannot be considered by this court.

In addition, after careful review, this court rejects all of Plaintiff's complaints regarding the proceedings before the EEOC. This court concludes that the EEOC properly refused to require Defendant to comply with Plaintiff's untimely and abusive discovery requests and properly granted summary judgment in Defendant's favor.

IT IS THEREFORE ORDERED THAT:

(1) The clerk is directed to substitute Eric K. Shinseki, Secretary of the Department of Veterans Affairs, as the proper Defendant in this action.

(2) Defendant's Motion for Summary Judgment (# 54) is GRANTED. Judgment is entered in favor of Defendant and against Plaintiff.

(3) This case is terminated. Accordingly, the final pretrial conference scheduled for November 6, 2009, at 2:30 p.m. and the jury trial scheduled for November 16, 2009, at 9:00 a.m. are hereby VACATED.